WILLIAM R. SMITH *v.* RICHARD E. CUMMINS ET AL

5-5279                                                    458 S. W. 2d 140

Opinion delivered October 5, 1970

*Smith, Williams, Friday & Bowen;* By: *James W. Moore,* for appellant.

*Guy H. Jones, Sr., Phil Stratton* and *Guy Jones, Jr.,* for appellees.

CARLETON HARRIS, Chief Justice. Marcine Cummins and her husband Richard Cummins instituted suit against William R. Smith, appellant herein, as a result of an automobile accident between Mrs. Cummins and Smith which occurred in Conway on February 24, 1969. Mrs. Cummins sought damages for alleged personal

injuries and Mr. Cummins sued for damage to his auto-
mobile. Appellant counterclaimed for the damage to his
automobile alleging negligence on the part of Mrs.
Cummins and asserting that she was acting as the
agent and servant of her husband. Subsequently, relief
was also sought against a third party defendant, Farm
Bureau Mutual Insurance Company of Arkansas, it being
asserted that Mrs. Cummins was employed by that com-
pany and was acting within the course and scope of her
employment at the time of the automobile accident,
which was occasioned by her negligence. After the In-
surance Company answered denying pertinent allega-
tions and after the filing of other amendments by the
parties, the case proceeded to trial. At the conclusion
of the evidence, the allegation that Mrs. Cummins was
an agent and employee of her husband was withdrawn
by counsel for appellant, who thereafter moved that the
case be submitted on interrogatories. This motion was
overruled; the court instructed the jury and six forms
of possible verdict were submitted to the jury to cover
whatever verdict might be reached. The first form was
a finding for Marcine Cummins fixing her damages at
$_____. The second form was a finding for Smith
on the complaint of Mrs. Cummins. The third form
was a finding for Mr. Cummins against Smith fixing
his property damage at $_____ and allocating the
negligence causing this damage as follows:

"William R. Smith ____%, Marcine Cummins, ____%,
using 100% as the total."

The fourth form of verdict related to a finding for
Smith against the third party defendant, Farm Bureau
Mutual Insurance Company of Arkansas and Marcine
Cummins, and assessing the amount of damages. Also
included with this form was a verdict for the Farm
Mutual Insurance Company of Arkansas against Wil-
liam R. Smith. The fifth form was a finding for Smith
on his counterclaim against Mrs. Cummins, and fixing
his damages at $_____. The final form of verdict
was one in behalf of Smith against Richard Cummins.
The jury was then told that if all twelve agreed on a

verdict, it was only necessary for the foreman to sign, but nine could also agree upon a verdict, sign it, and return it into court and it would become the jury verdict.

After the jury had retired for one and one half hours, it returned to the courtroom, and the foreman stated that he had a question to propound to the court. The foreman stated:

MR. ZELLNER:

"We have a question as to whether we bring in one verdict from these papers; you have given us, or can we bring in more than one verdict. * * * * *

Judge, what is confusing us that one of these pieces of paper is all we can use?"

The court replied that two forms of verdict could be used or that three forms could be used. However, these forms of verdict were not pointed out to the foreman. The jury retired to the jury room, and after approximately an hour, returned back into Open Court with a form of verdict. The court then stated:

THE COURT:

"Mr. Foreman, you have arrived at one form of verdict, but I am afraid they are not complete. By this verdict you have handed me you have settled the property damage involved in this lawsuit. I will ask you to go back and take all the verdicts and see what you can do further. * * * * *

By the verdicts which you have returned to me you have settled the property damage involved—the property damage involved in this occurrence to some extent, but you have not settled the claim for damages of the other part of the law suit.

MR. ZELLNER:

In other words, we can still use two more verdicts?

THE COURT:

Right."

After again retiring and returning some twenty minutes later, the foreman advised that the jury was deadlocked. Upon being asked how the jury stood with reference to numbers, the foreman replied "No vote has the same numbers". The court then advised that it had been handed two verdicts by the jury but that it could not "accept both of these verdicts—one or the other, but I can't accept both". It was further stated that it would be necessary for the jury to return a verdict either for the plaintiff or the defendant and if such a verdict could not be reached by at least nine jurors, then there was no verdict at all.

One of the jurors stated that the jury had been trying to decide how much to give to Mrs. Cummins, and he explained as follows:

MR. BAILEY:

"And somebody would suggest something and make a motion for so many dollars, and it would be seconded and voted on, and one two or three of them would vote, and we started at thousands and got down to $100.00 and couldn't get as many as four votes on nothing."

Thereafter the court and the attorneys retired to chambers where the record reveals the following:

THE COURT:

"Let the record show the jury has been out a little better than three hours and the foreman said that they were deadlocked and positively not able to agree, and Mr. Bailey said they couldn't get as many as four on any one proposition; and the Court asked the attorneys on all sides, and nobody agreed that the Court declare a mistrial, or hung

jury, and the Court, on it's own motion declared a mistrial in this cause.

MR. MOORE:

Let the record show counsel for the defendant reserves any rights he might have in the way—any rights he may have to object, and any rights to appeal from any order declaring a mistrial."

All then returned to the courtroom where the foreman of the jury reiterated that the jury was deadlocked and several of the members of the jury agreed that such was the case, and that no more than four people could agree on any given point. The court then announced that, on its own motion, it was declaring a mistrial, and the jury was discharged from further consideration of the case.

Though the record of the trial concludes with this action by the court, and does not reveal what happened thereafter, appellant says that after the mistrial was declared, the parties were then allowed to see the two verdict forms, each of which had been signed by ten members of the jury. At any rate, the transcript reveals that the jury did make findings under two verdict forms, as follows:

"We, the jury, find for Richard Cummins and against William R. Smith and fix his damages as follows:
For property damage                                    $ 0
the negligence causing which damages we allocate as follows:

| | |
|---|---|
| William R. Smith | 50% |
| Marcine Cummins | 50% |
| Total | 100%" |

The other verdict returned was as follows:

"We, the jury, find for William R. Smith on his counterclaim against Marcine Cummins and fix his damages at $100.00."

For reversal, appellant asserts that the trial court erred in declaring a mistrial in view of the fact that the jury had actually reached a verdict and was deadlocked on a superfluous issue.

Appellees, in arguing for an affirmance, rely upon three points, and it appears that there may well be merit in these contentions; however, we see no need to discuss all of these points since it is very clear, as pointed out by appellee in Point Two, that no objection was made to the court's action in declaring a mistrial. It is at once obvious that simply reserving "any rights he may have to object", is definitely not the same as making an objection, for the language used by counsel simply means that he *might* decide *later* to make an objection. To approve such procedure would have the effect of permitting one to withhold an objection until the jury verdict was in, and then, if the verdict were favorable, accept it, but if unfavorable, object to the action taken. This is not permissible. *Reynolds* v. *Nutt.* 217 Ark. 543, 230 S. W. 2d 949.

Of course, it is at once apparent that provisions of Section 27-1762 and Section 27-2154 Ark. Stat. Ann. (Repl. 1962), setting out the requirements for proper objections, and the necessity to object, have not been complied with. It follows that appellant is not in a position to question the propriety or legality of the court's action.

Affirmed.